[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF
APPEALS
ELEVENTH CIRCUIT
MAY 15, 2012
JOHN LEY

No. 09-10773
_____

D. C. Docket No. 91-06717-CMA

THOMAS DEWEY POPE,

Petitioner-Appellant,
Cross-Appellee,

versus

SECRETARY FOR THE DEPARTMENT OF CORRECTIONS,
Walter A. McNeil,

Respondent-Appellee,
Cross-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 15, 2012)

Before TJOFLAT, MARCUS and BLACK, Circuit Judges.

MARCUS, Circuit Judge:

Petitioner Thomas Dewey Pope was convicted on three counts of first degree murder for the deaths of Caesar Di Russo, Albert Preston Doranz, and Kristine A. Walters, and was sentenced to death in Florida's state courts for the murder of Walters. On collateral review of this capital case, the district court granted in part the petitioner's federal application for writ of habeas corpus, finding that trial counsel was ineffective during the penalty phase of the trial by failing to develop and present substantial mitigating evidence to the jury, and by failing to object to the prosecutor's closing argument to the jury that Pope preferred a death sentence over life imprisonment. The district court rejected the remainder of Pope's petition, holding, among other things, that trial counsel was not ineffective during the guilt phase of the trial. While we affirm the district court's denial of habeas relief as to Pope's guilt-phase ineffectiveness claims, we vacate the district court's grant of habeas relief concerning Pope's penalty-phase ineffectiveness claims, and remand for the district court to hold an evidentiary hearing on those claims.

## I.

### A.    The Murders and Pope's Trial

Based on the evidence presented at trial, the Florida Supreme Court recited the essential facts of the triple homicide in this way:

On January 19, 1981, the bodies of Al Doranz and Caesar Di Russo were discovered in an apartment rented to Kristine Walters. Both had been dead several days but Di Russo's body was in a more advanced state of decomposition than Doranz's. Both victims had been shot, Doranz three times and Di Russo five times. A spent .22 caliber shell casing was found under Di Russo's body. Three days later, the body of Kristine Walters was found floating in a canal. She had been shot six times with exploding ammunition, her skull was fractured and she had been thrown into the canal while still breathing.

All three victims had been shot with exploding ammunition, so ballistics comparison was impossible. However, parts of an AR-7 rifle were found in the canal near Walters's body and the spent shell casing under Di Russo's body had been fired from an AR-7 weapon.

Investigation led to appellant's girlfriend, Susan Eckard, and ultimately police were able to show that Doranz purchased an AR-7 rifle for Pope shortly before the murder. Eckard and Pope admitted being with Doranz and Walters at Walters's apartment on Friday night, the night Doranz and Di Russo were killed. Eckard later testified that Pope had arranged a drug deal with Doranz and Di Russo. She stated that she and Pope left Walters's apartment to visit Clarence "Buddy" Lagle and to pick up some hamburgers. They then returned to the apartment where Pope and Doranz convinced Walters to go with Eckard to the apartment where Pope had been staying.

Later that same night, Pope arrived at his apartment and told the women there had been trouble and that Doranz had been injured but that it was best for Walters to stay away from him for a while. Eckard said she knew that Di Russo and Doranz were dead, and that she had known Pope intended to kill them at this point. The next day, Walters checked into a nearby motel, where Pope supplied her with quaaludes and cocaine. On Sunday, Pope told Walters he would take her to see

3

Doranz.  Eckard testified that Pope had told her that he knew he had to get rid of Walters but that he regretted it because he had become fond of her.  According to Eckard, Pope described Walters's murder when he returned and said the gun had broken when he beat Walters over the head with it.  The next day Eckard went with Pope to the scene of the crime to collect fragments of the broken stock and to look for the missing trigger assembly and receiver.

Buddy Lagle told the police he had made a silencer for the AR-7 rifle at Pope's request.  Because Lagle planned to leave the jurisdiction to take a job on a ship in the Virgin Islands, he was deposed on videotape pursuant to an order granting the state's motion to perpetuate testimony.  When the state was unable to produce him at trial, the videotape was admitted into evidence.

Pope v. State, 441 So. 2d 1073, 1074-75 (Fla. 1983).  As noted, Pope's ex-girlfriend, Susan Eckard,[1] testified against him at trial, providing much of the damaging testimony.  Pope also testified, denying that he had killed anyone.

Pope was convicted on three counts of first degree murder for the deaths of Caesar Di Russo, Albert Preston Doranz, and Kristine A. Walters.  After the jury's guilty verdict, but before the penalty phase, Pope and his trial counsel[2] had this exchange with the court, outside the jury's presence:

---

[1] "Eckard" is also spelled "Eckerd," "Eckert," and "Eckhart" in various court documents throughout the lengthy record of this case.  We use "Eckard" in our opinion.

[2] During the initial pre-trial proceedings in Florida's Circuit Court for Broward County, Pope was represented by Douglas McNeil, an attorney with the State Public Defender's Office. Prior to trial, McNeil withdrew and the state circuit judge appointed Scott T. Eber as Special Public Defender to represent Pope for what remained of pre-trial proceedings and for trial.

Eber:    I have discussed the situation that is presently before us with Mr. Pope. I have discussed it informally with the Court. Mr. Pope does not wish me to argue to the jury at this point. I understand that it is my obligation as his attorney to do so, however. Mr. Pope feels that it is my obligation, as his attorney, to follow his wishes in this situation. I believe he may have something he desires to say, if the Court would entertain that. But I have told him, and I believe that it is my obligation to make a presentation to the jury.

The Court:    Alright. If you want to say anything, Mr. Pope, you may.

Pope:    I'd really rather not have him make a presentation on my behalf to the jury. You only have two choices, and I know what my choice is. I know I'm not trying to take your job, that is not what I want and is not necessarily what you are going to give me; but I would rather have the death sentence than the twenty-five years in prison.

The Court:    Alright. I still think you ought to speak on his behalf as your obligation. You made your wishes known. I can understand that. Thank you. Bring the jury in.

During closing arguments, the prosecutor informed the jury that "Mr. Pope has announced that he would rather receive a death penalty than life imprisonment. I would say to you that your verdict, your recommendation, should not be based on that." Notably, defense counsel Eber did not object to this salient comment. Thereafter, the jury recommended life sentences for the murders of Di Russo and Doranz, and the death penalty for the murder of Walters. The jury voted nine to three for death.

5

The trial judge adopted the jury's sentencing recommendations. In so doing, the judge found four aggravating circumstances surrounding Walters's murder: (1) Pope was previously convicted of another capital felony (the murders of Di Russo and Dorantz), Fla. Stat. § 921.141(5)(b); (2) the capital felony was committed for the purpose of avoiding a lawful arrest (for the murders of Di Russo and Dorantz), id. § 921.141(5)(e); (3) the capital felony was especially heinous, atrocious, or cruel (in part because Pope failed to show any remorse), id. § 921.141(5)(h); and (4) the capital felony was a homicide committed in a cold, calculated, and premeditated manner (because Pope spent two days with Walters before murdering her), id. § 921.141(5)(i). The judge found one mitigating circumstance, the "catchall" provision, Fla. Stat. § 921.141(6)(h), because Pope had served in Vietnam and was honorably discharged from the Marines. The trial judge then sentenced Pope to die.

## B.    Post-Trial State Court Proceedings

Pope filed a direct appeal to the Florida Supreme Court, arguing, among other things, that the trial court erred in allowing Lagle's videotaped deposition to be presented to the jury. The Florida Supreme Court affirmed the convictions and sentences. Pope, 441 So. 2d at 1074.

6

Pope's collateral attack began when he filed in state court a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, claiming the ineffective assistance of counsel. The motion raised twelve errors by trial counsel, including the five guilt-phase ineffectiveness claims before us in this appeal, as well as two penalty-phase ineffectiveness claims: (1) counsel's failure to object to improper comments made by the court and the prosecutor; and (2) counsel's failure to present mitigating evidence drawn from Pope's background. The trial court held that except for two of his claims, Pope's allegations were either insufficient to state a claim for ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), or were specifically refuted by the record.

As for the two remaining claims, the court rejected the first one -- concerning ineffective assistance stemming from the introduction of Lagle's videotaped deposition -- because it found, after conducting an evidentiary hearing on the issue, that Lagle was indeed unavailable for trial. An evidentiary hearing was set on the second of Pope's remaining claims -- that his trial counsel was ineffective for using the "Vietnam Syndrome Defense" against Pope's wishes. After the evidentiary hearing, the court denied this claim too, finding that Pope knew, understood, and concurred in his trial counsel's opinion that Dr. William

7

Weitz's testimony regarding the Vietnam Syndrome Defense should be used during the guilt phase of the trial.

On appeal to the Florida Supreme Court, Pope argued that the trial court improperly failed to hold an evidentiary hearing on several claims raised in his motion for new trial, including the remaining guilt-phase ineffectiveness claims, as well as the penalty-phase ineffectiveness claims listed above. The Florida Supreme Court affirmed the trial court's denial of Pope's Rule 3.850 motion. Pope v. State, 569 So. 2d 1241 (Fla. 1990) (per curiam).

During the pendency of the Rule 3.850 motion, Pope filed a petition for writ of habeas corpus with the Florida Supreme Court alleging ineffectiveness of appellate counsel. The Florida Supreme Court denied Pope's petition. Pope v. Wainwright, 496 So. 2d 798, 800 (Fla. 1986). Of particular relevance for our purposes, the court agreed with Pope's claim that the prosecutor had made "clearly improper" comments during closing argument of the penalty phase, the "most bothersome" being "the comment on the petitioner's preference for death." Id. at 803. Nonetheless, the court held that "in light of the aggravating evidence presented . . . none [of the comments] are so egregious as to fundamentally undermine the reliability of the jury's recommendation." Id.

Following his initial state Rule 3.850 motion and petition for writ of habeas corpus, Pope filed in state court several other Rule 3.850 motions, several petitions for writ of habeas corpus, and miscellaneous motions attempting to raise new claims, and to cure procedurally defaulted claims and exhaust claims that the federal court subsequently deemed unexhausted. All of these filings were denied in turn. See, e.g., Pope v. State, 702 So. 2d 221 (Fla. 1997) (per curiam), reh'g denied (Fla. 1998).

## C. Federal Post-Conviction Proceedings

On September 9, 1991, Pope sought collateral relief in the United States District Court for the Southern District of Florida, filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pope raised seven claims, some with multiple sub-claims, resulting in 61 claims in all. Most significantly for our purposes, Claim II alleged the ineffective assistance of penalty-phase counsel. The State argued failure to exhaust as a defense to this claim and others; the district court agreed, dismissing without prejudice Pope's petition because it "contain[ed] both exhausted and unexhausted claims." Notably, the district court did not find Claim II unexhausted. Once the district court entered its order, the Clerk of Court entered a notation on the docket sheet characterizing the case as "closed."

9

Following litigation in state court to exhaust the unexhausted claims, Pope returned to federal district court and amended his federal habeas corpus petition on February 19, 1999. Along with his amended petition, Pope moved to "reopen proceedings." Claim II as developed in the amended petition was nearly identical to Claim II in Pope's original 1991 petition. The State again argued that Claim II was unexhausted. The district court rejected that defense, and ordered the State to respond on the merits to this claim. Thereafter, in July 2000, the State argued in a supplemental response to Pope's amended petition that the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 100 Stat. 1214 (1996) ("AEDPA"), applied to the case. Pope replied that the State had waived its AEDPA argument because it did not mention AEDPA in its prior answer to Pope's amended petition.

Also significant for our purposes, Pope sought an evidentiary hearing from the district court on all of his claims. The motion was denied and no hearing was conducted. Without resolving whether AEDPA applied to his petition, the district court relied on the "arguably less stringent" pre-AEDPA law to deny the request for an evidentiary hearing, because Pope had obtained a hearing in state court on "certain of the issues he presented, including ineffectiveness of trial counsel," presumably referring to the state court hearings on the introduction of the Lagle

10

deposition and the use of the Vietnam Syndrome Defense during the guilt phase of the trial.

After various state and federal court filings, and after the Florida Supreme Court denied Pope's third state habeas corpus petition, Pope's federal petition for writ of habeas corpus now consisted of eight claims (comprised of 23 sub-claims), including ineffective assistance of counsel at the guilt and penalty phases of the trial. In September 2006, the State filed a second supplemental response to Pope's amended petition, and, this time, among other things, "withdr[ew] its suggestion that [AEDPA] applies."

In 2008, the district court ruled on the merits of Pope's federal petition for writ of habeas corpus. The district court granted the petition in part -- regarding Pope's claim that he received ineffective assistance of counsel at sentencing -- and rejected all of the remaining claims. In so doing, the district court first determined that AEDPA did not apply to Pope's petition, because his original petition had been filed on September 9, 1991, before the effective date of AEDPA. The court denied Pope's seven guilt-phase ineffective assistance claims, finding generally that he could not satisfy Strickland.

As for Pope's penalty-phase ineffective assistance claims, however, the district court concluded that counsel's failure to discover and present any of the

ample available mitigation evidence fell below any objective standard of reasonable representation. It reached this conclusion even though Pope had told the trial court and his counsel that he did not want to present any mitigating evidence to the jury, likening Pope's case to Blanco v. Singletary, 943 F.2d 1477 (11th Cir. 1991). The district court further determined that counsel's failure to object to the prosecutor's comment about Pope's stated preference for death over life imprisonment also fell below any objective standard of reasonableness. Given the combination of factors surrounding sentencing (including counsel's failure to present mitigating evidence, counsel's failure to object to the prosecutor's statement that Pope preferred to die, and three of the jurors' votes for a life sentence), the court concluded that there was a reasonable probability that but for counsel's errors Pope's jury would have returned a recommendation of life imprisonment.

The State moved to alter or amend the judgment, arguing this time, among other things, that AEDPA should apply to Pope's petition. In ruling on the motion, the district court declined to determine whether the State had waived its AEDPA argument, because, it concluded, the result would remain the same regardless of whether pre-AEDPA or post-AEDPA standards applied. This timely appeal followed.

## II.

First, we turn to the standard of review. Which standard of review we apply depends, at least initially, on whether AEDPA governs Pope's habeas petition, which in turn depends on when Pope's petition is said to have been filed. This is because AEDPA only applies to federal habeas petitions filed after April 24, 1996. See Wilcox v. Fla. Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998) (per curiam). As we have detailed, Pope's original habeas petition was filed in 1991, but the petition the district court ultimately ruled on was filed in 1999, because Pope's original application had been dismissed without prejudice to allow for the exhaustion of certain claims in state court. Over the years, the State's arguments concerning whether AEDPA applies to Pope's petition have been inconsistent at best. Thus, in response to Pope's 1999 amended petition, the State argued for the application of AEDPA, but it withdrew that argument in 2006. After the district court ultimately ruled on Pope's petition in 2008, however, the State revived the issue in a motion to alter or amend the judgment, and in its appeal to this Court, the State continues to maintain that AEDPA applies.

Even if the State has waived the argument that AEDPA applies to Pope's petition (and we observe that the district court made no such finding), we would nonetheless feel constrained to address it now. We have said that "a circuit court

13

of appeals has the power -- even in the habeas corpus context -- to consider <u>sua</u> <u>sponte</u> issues that a [party] fails to preserve either in the district court or on appeal." <u>Thomas v. Crosby</u>, 371 F.3d 782, 801 (11th Cir. 2004). In <u>Thomas</u>, we found that we could consider an issue <u>sua sponte</u> if it raises "a sufficiently important federal issue" or "when it can fairly be characterized as a 'threshold' matter to another question properly before it." <u>Id.</u> Moreover, while we "generally will not consider an issue or theory that was not raised in the district court," <u>FDIC</u> <u>v. Verex Assurance, Inc.</u>, 3 F.3d 391, 395 (11th Cir. 1993), we have allowed for an exception to this rule when, <u>inter alia</u>, "the proper resolution [of the issue] is beyond any doubt," <u>Dean Witter Reynolds, Inc. v. Fernandez</u>, 741 F.2d 355, 360-61 (11th Cir. 1984) (quotation omitted).

In this appeal, we address the AEDPA question -- even if the State did not properly raise it -- because plainly, it is an important federal issue, raises a threshold question crucial to our analysis, and most importantly, yields a clear answer.[3] Indeed, it is undeniable that AEDPA applies here, and Pope has raised no plausible argument to the contrary.

---

[3] As the Fourth Circuit has held, "Congress clearly intended the standard of review of the AEDPA to apply to <u>habeas</u> petitions filed after its enactment, . . . and we will not hold that the appropriate standard of review is waived just because the parties did not realize what that standard was." <u>Diaz v. Moore</u>, Nos. 97-6586, 97-6604, 1998 WL 112526, at *2 n.6 (4th Cir. Mar. 16, 1998) (unpublished).

As we've explained, Pope's 1991 federal habeas petition was dismissed without prejudice on non-exhaustion grounds in 1994, and the case was then officially deemed "closed" by the Clerk of Court. When Pope returned to federal court in 1999, he filed an amended habeas corpus petition, along with a motion to "reopen proceedings." In circumstances almost identical to this one -- where a petition filed before April 1996 was dismissed without prejudice for non-exhaustion or on other procedural grounds and the petitioner filed an amended petition after April 1996 -- at least six other Circuits have concluded that AEDPA applies. See Weaver v. Bowersox, 241 F.3d 1024, 1029 (8th Cir. 2001) ("[AEDPA] applies even when a prisoner's original petition was filed prior to AEDPA's effective date and dismissed without prejudice for failure to exhaust state remedies."); Barrientes v. Johnson, 221 F.3d 741, 751 (5th Cir. 2000) (AEDPA governs "a federal habeas corpus petition filed after [its] effective date . . . where the petitioner's previous federal petition was filed before the effective date of AEDPA and was dismissed without prejudice for failure to exhaust state remedies."); Sanchez v. Gilmore, 189 F.3d 619, 622-23 (7th Cir. 1999) ("[A] second petition [was] filed in 1997, and that is the year which controls whether AEDPA applies. It applies; he cannot move the date to pre-AEDPA times by relying on his old unexhausted petition."); Taylor v. Lee, 186 F.3d 557, 560 (4th

15

Cir. 1999) ("Since [Taylor] filed his second petition . . . well after the signing of the AEDPA . . . , the AEDPA applies in this case."); Mancuso v. Herbert, 166 F.3d 97, 101 (2d Cir. 1999) ("[T]he AEDPA applies to a habeas petition filed after the AEDPA's effective date, regardless of when the petitioner filed his or her initial habeas petition and regardless of the grounds for dismissal of such earlier petition.").

This result is consistent with our prior precedent in the non-AEDPA context, which has noted that "[w]here the trial court allows the plaintiff to dismiss his action without prejudice, . . . . the plaintiff has acquired that which he sought, the dismissal of his action and the right to bring a later suit on the same cause of action, without adjudication of the merits. The effect of this type of dismissal is to put the plaintiff in a legal position as if he had never brought the first suit." LeCompte v. Mr. Chip, Inc., 528 F.2d 601, 603 (5th Cir. 1976) (quotation omitted).[4] Here, because Pope sought to have his initial petition dismissed without prejudice and the case was closed by the district court, Pope filed his 1999 petition

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all rulings of the former Fifth Circuit issued prior to October 1, 1981. The new Fifth Circuit has since recognized in the AEDPA context that "there is no general consensus that dismissing a federal habeas application for non-exhaustion is the equivalent of holding it in abeyance pending exhaustion." Graham v. Johnson, 168 F.3d 762, 779 (5th Cir. 1999).

16

anew, just as though the earlier petition had never existed. Accordingly, his 1999

petition is the operative one, and AEDPA applies.[5]

In reaching this conclusion, we are unpersuaded by Pope's argument that

AEDPA should not apply because, just like in Roper v. Weaver, 550 U.S. 598

(2007) (per curiam), actions of the district court and the State contributed to the

filing of Pope's amended petition after AEDPA's effective date. Not only does the

record fail to show that Pope would have filed his amended petition before

AEDPA's 1996 enactment had the district court and the State acted more quickly,

but also, this case is not akin to Roper, where the district court erroneously

dismissed a petition for non-exhaustion. Here, there was no similar error.

---

[5] None of the cases Pope cites to are on point. In Allen v. United States, 175 F.3d 560, 562 (7th Cir. 1999), the Seventh Circuit determined that AEDPA did not apply to a 1997 petition, but there, it found that the 1997 petition was not a "new petition" filed after AEDPA; rather, the district court had dismissed an initial petition without prejudice (notably, not on exhaustion grounds) and set a date for an amended petition to be filed. The petitioner missed that deadline, but ultimately the district court granted the petitioner's request to file the amended petition instanter, "thus excusing the petition's tardiness." Id. Furthermore, the district court specifically found that "[t]hough eighteen months elapsed between the time Allen filed his original Section 2255 motion and the time he filed his amended motion, [Allen's] action was 'pending' at the time the AEDPA was enacted." Id. Thus, Allen did not involve a situation, like this one, where the case was closed and then reopened. And in Fuller v. Johnson, 158 F.3d 903, 905 (5th Cir. 1998), the petitioner's first pre-AEDPA petition was never dismissed at all, but he was allowed to file a post-AEDPA amendment.

Slack v. McDaniel, 529 U.S. 473, 478 (2000), also dealt with a different issue -- that a habeas petition filed "after an initial petition was dismissed without adjudication on the merits for failure to exhaust state remedies is not a 'second or successive' petition as that term is understood in the habeas corpus context." In re Gasery, 116 F.3d 1051, 1052 (5th Cir. 1997) (per curiam), also dealt with the second or successive issue. And in Zarzela v. Artuz, 254 F.3d 374 (2d Cir. 2001), a timeliness case, AEDPA's applicability was undisputed.

17

In short, we conclude that Pope filed his operative federal habeas petition after April 24, 1996, and, therefore, that Section 2254(d) of AEDPA governs this proceeding.  See Wilcox, 158 F.3d at 1210.  Thus, a federal court may grant Pope habeas relief only if the state court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or was (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established law if the court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court confronted facts that are "materially indistinguishable" from relevant Supreme Court precedent but arrived at a different result.  Williams v. Taylor, 529 U.S. 362, 405 (2000) ("Terry Williams").  A state court decision is an "unreasonable application" of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context.  Jennings v. McDonough, 490 F.3d 1230, 1236 (11th Cir. 2007).  A state court's factual findings are presumed correct unless rebutted by the petitioner with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  "This presumption of correctness applies equally to factual determinations made

18

by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

We review de novo whether a district court properly ruled on a procedural bar question. Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1345 (11th Cir. 2004). Finally, we review for abuse of discretion a district court's decision to deny an evidentiary hearing. Hall v. Head, 310 F.3d 683, 690 (11th Cir. 2002).

**III.**

Pope's penalty-phase ineffectiveness argument has two components. First, the petitioner has argued that his trial counsel was ineffective because of counsel's alleged failure to conduct a reasonable investigation into Pope's life in order to find mitigating evidence to present during the penalty phase. Pope also claims that his counsel's "failure to object to prosecutorial misconduct an[d] improper argument" rendered the penalty-phase proceedings fundamentally unfair, resulting in the ineffective assistance of counsel.

It is by now axiomatic that to succeed on a claim of ineffective assistance, Pope must show both deficient performance and prejudice: that is, he must show (1) that "counsel's representation fell below an objective standard of reasonableness," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

19

different." Strickland, 466 U.S. at 688, 694; accord Wiggins v. Smith, 539 U.S. 510, 521, 534 (2003); Terry Williams, 529 U.S. at 390-91; Darden v. Wainwright, 477 U.S. 168, 184 (1986). Because a petitioner's failure to establish either deficient performance or prejudice is fatal to a Strickland claim, we need not address both Strickland prongs if the petitioner fails to satisfy either one of them. See Windom v. Sec'y, Dep't of Corr., 578 F.3d 1227, 1248 (11th Cir. 2009) (per curiam).

Federal habeas review of a petitioner's claim is typically precluded when the petitioner procedurally defaulted on or failed to exhaust the claim in state court. Ward v. Hall, 592 F.3d 1144, 1156 (11th Cir. 2010). Procedural bar occurs when a petitioner's failure to comply with state procedures provides an "independent and adequate" basis for the state court's decision. A failure to exhaust occurs, in turn, when a petitioner has not "fairly present[ed]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Mason v. Allen, 605 F.3d 1114, 1119 (11th Cir. 2010) (per curiam) (quotation omitted).

A.    **Procedural Bar**

To begin, the State claims that we should reject Pope's failure-to-mitigate and failure-to-object claims outright because the state courts found them to be procedurally barred under Florida law. We are unpersuaded.

In determining how the state courts treated Pope's claims, we look to the Florida Supreme Court's denial of the claims, because it is "the last state court rendering a judgment in the case." Harris v. Reed, 489 U.S. 255, 263 (1989). The Florida Supreme Court's decision is unilluminating, however, since it is not easy to discern whether the state court rejected Pope's claims under Florida Rule 3.850 because they were legally insufficient on their face, or because they were refuted by the record -- what we typically think of as a "merits" ruling.[6] The Florida Supreme Court upheld the trial court's summary denial of all of Pope's penalty-phase ineffectiveness claims -- including both the failure-to-mitigate and the

---

[6] As the Florida Supreme Court has explained:

> [R]ule 3.850 distinguishes between claims that are facially insufficient and those that are facially sufficient but are also conclusively refuted by the record. A determination of facial sufficiency will rest upon an examination of the face, or contents, of the postconviction motion. Because the determination of facial sufficiency under rule 3.850 is one of law and involves an evaluation of the legal sufficiency of the claim alleged, the evidence in the record will ordinarily be irrelevant to such an evaluation. The examination of the record will ordinarily come only after a claim is found to be facially sufficient, and the purpose of that examination will be solely to determine whether the record conclusively refutes the claim.

Jacobs v. State, 880 So. 2d 548, 551 (Fla. 2004) (per curiam).

21

failure-to-object claims -- saying that "[w]e have reviewed the motions, files, and records in this case and agree with the trial court that they conclusively demonstrate that Pope is entitled to no relief in connection with the above claims." Pope, 569 So. 2d at 1245.[7]  If anything, the Florida Supreme Court's statement that it had reviewed the case's files and records suggests that it had rejected all of Pope's claims on the merits.  Moreover, the State's brief before the Florida Supreme Court had argued that the claims were both facially insufficient and refuted by the record.

But even assuming that the state court rejected Pope's claims on facial insufficiency grounds, that does not mean that the state court found Pope's claims

_____

[7] The trial court's summary denial of Pope's claims is also unilluminating.  Rather than resolving Pope's claims individually, the trial court, like the Florida Supreme Court, lumped together several guilt- and penalty-phase ineffectiveness claims, and held:

> [T]he Court is of the opinion that the allegations maintained by the Defendant . . . are either insufficiently stated in light of Strickland v. Washington, 466 U.S. 668 (1984), or are specifically refuted by the entirety of the transcript before this Court . . . .  The Court notes that the abundant evidence against the Defendant, together with the remainder of the transcript which reflects a very effective defense on behalf of the Defendant by his trial counsel, refute both the specific allegations that counsel's conduct was below the standard required in Strickland, as well as the "prejudice" necessary to establish such claims.

Because the trial court did not specify which claims it found to be deficient or which ones it found to be refuted by the record, and because the State's brief to the trial court argued both grounds for denying these claims, we cannot determine which ruling applied to which claims.  Rather, the trial court expounded -- however briefly -- on the fact that the record refuted both prongs of Strickland, lending support to the view that it was actually rejecting all of Pope's claims in light of the record.

22

to be procedurally barred. We have recently held that an Alabama state court's summary dismissal of a petitioner's post-conviction claims -- for failure to plead facts with sufficient specificity -- did not apply a procedural bar to dismiss the claims, which were therefore subject to AEDPA review. Borden v. Allen, 646 F.3d 785, 810-13 (11th Cir. 2011). In so doing, we noted that "[t]he dismissal of a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), for example, unambiguously constitutes a ruling 'on the merits.'" Id. at 812. And similar to Federal Rule of Civil Procedure 8(a)(2), which requires "a short and plain statement of the claim showing that [he] is entitled to relief," Florida Rule of Criminal Procedure 3.850(c)(6) simply requires "a brief statement of the facts (and other conditions) relied on in support of the motion." Thus, just as under our federal procedural rules, a Florida state court's dismissal of a post-conviction claim for facial insufficiency constitutes -- at least for purposes of the procedural default analysis -- a ruling "on the merits" that is not barred from our review.[8] In

---

[8] Likewise, in Griffin v. Wainwright, 760 F.2d 1505, 1518 (11th Cir. 1985) (per curiam) ("Griffin I"), vacated on other grounds, 476 U.S. 1112 (1986), reaff'd sub nom., Griffin v. Dugger, 874 F.2d 1397 (11th Cir. 1989) (per curiam) ("Griffin II"), a Florida court had denied post-conviction relief without an evidentiary hearing on a petitioner's claim that the death penalty was unconstitutionally imposed, concluding that the claim was "insufficient on its face to state a claim for relief." Id. at 1518 (quoting Griffin v. State, 447 So. 2d 875, 876 (Fla. 1984)). We found that "this is an exhausted claim," and was not otherwise precluded from our review. Id. Griffin I was vacated and remanded by the Supreme Court for further consideration in light of Cabana v. Bullock, 474 U.S. 376 (1986), which requires a finding of petitioner's culpability for imposition of the death penalty. On remand, we found that the Florida courts had satisfied

23

short, whether the Florida Supreme Court rejected the claims for facial insufficiency or only after concluding that they were refuted by the record, the determination would have been on the merits.

## B.    Exhaustion

The State also presses us to reject Pope's failure-to-mitigate claim as unexhausted because he impermissibly expanded this claim when he raised it on federal habeas review.  Once again, we are unpersuaded.

The exhaustion requirement is satisfied when a habeas petitioner presents the federal claim to the appropriate state court, thereby "afford[ing] the state courts a meaningful opportunity to consider [the] allegations of legal error."  Vasquez v. Hillery, 474 U.S. 254, 257 (1986).  The Supreme Court has instructed us that if "the substance of a federal habeas corpus claim [was] first . . . presented to the state courts," "despite variations in the . . . factual allegations urged in its support," the claim is exhausted.  Picard v. Connor, 404 U.S. 270, 277-78 (1971).

Based on Supreme Court law, we have held that "courts should exercise flexibility in determining whether defendants have met [the exhaustion]

---

Cabana in this case, and also addressed an issue under McCleskey v. Kemp, 481 U.S. 279 (1987), finding that Griffin's death sentence was not unconstitutional based on the race of his victims.  Griffin II, 874 F.2d at 1399, 1401-02.  By resolving the McClesky issue, we addressed Griffin's claim on the merits, which means that we continued to abide by our conclusion in Griffin I that we were not precluded from hearing the claim.

requirement." Cummings v. Dugger, 862 F.2d 1504, 1507 (11th Cir. 1989); see also Henry v. Dep't of Corr., 197 F.3d 1361, 1367 (11th Cir. 1999) ("The exact presentation of the claims in the state and federal courts may vary some."). In other words, an issue is exhausted if "the reasonable reader would understand [the] claim's particular legal basis and specific factual foundation" to be the same as it was presented in state court. Kelley, 377 F.3d at 1344-45. We have said in the ineffectiveness context:

> [A] general allegation of ineffective assistance or a specific allegation of ineffective assistance [made in state court] wholly unrelated to the ground on which the claim ultimately depends [in federal court] will [not] immunize a petitioner from a finding of procedural default.

Ogle v. Johnson, 488 F.3d 1364, 1369 (11th Cir. 2007) (emphasis added).

Here, the failure-to-mitigate-at-sentencing claim as pled in Pope's federal habeas petition raised the exact same legal issue that was presented to the state court -- that but for the complete absence of any investigation and presentation of mitigation evidence, there is a reasonable probability that the result of Pope's sentencing proceeding would have been different. Specifically, Pope argued on December 30, 1986 in his Rule 3.850 motion for post-conviction relief that trial counsel "failed to present any evidence of mitigating circumstances during the penalty phase of defendant's trial other than the standard plea of mercy from the

25

defendant's mother," and "did little or nothing to develop evidence of such mitigating factors such as defendant's psychological history, performance in the military, or his capacity for rehabilitation." In his federal petition, Pope's allegations center around his abused and impoverished childhood, his positive personality traits, his mental health issues, and his honorable military service in a combat zone. While his federal petition certainly expanded on the topics raised earlier in state court, we cannot ignore that they involve the same issues raised there -- his psychological history, his performance in the military, and his capacity for rehabilitation -- in the context of an ineffective assistance of counsel claim. The federal question was thus "plainly defined," Kelley, 377 F.3d at 1345, so that the state courts and the State were made fully aware of Pope's ineffectiveness claim, "despite variations in the . . . factual allegations urged in its support," Picard, 404 U.S. at 277.[9] We, therefore, conclude that the district court did not err

---

[9] As for the State's claim that Pope's state court post-conviction pleading left the state court to speculate about whether Pope wanted positive or negative aspects of his life to be presented -- i.e., whether he was abused as a child or grew up in a loving family with many friends, was honorably or dishonorably discharged, was a decorated veteran or one who was stationed away from the action, had a mental disease, was mentally retarded, or had a high IQ -- that argument is without merit. The record from the trial touches on enough of these issues to have made it clear to the state post-conviction court what Pope intended to show -- for example, he testified at trial that he was honorably discharged and had some involvement with action during combat, and an expert testified that Pope suffered from post-traumatic stress disorder. Thus, Pope's allegations were not so "speculative" as to have left the state post-conviction court without any idea as to what he would have shown.

26

in thrice rejecting the State's argument that Pope's failure-to-mitigate claim was unexhausted.

## IV.

Having concluded that Pope's penalty-phase claims are properly before us, we turn to the merits. The procedural history surrounding these claims is tortured. As we explain below, although Pope consistently sought an evidentiary hearing in state court to develop his penalty-phase claims, no hearing was ever held. Even the federal district court denied his request for an evidentiary hearing to develop these claims, albeit under pre-AEDPA law, on the ground that Pope had already participated in two state-court hearings. But these hearings barely touched on his counsel's performance during the penalty phase.[10] The record, therefore, leaves us

---

[10] Pope's trial counsel, Eber, never testified at any state evidentiary hearing, although he did submit to an uncompleted deposition, in which his preparation for the penalty phase of the trial was broached only in the following brief exchange:

Q: Do you recall doing any investigation about any mitigating factors?

A: Specifically, no.

Q: Did you ever talk with his mother, for instance?

A: I don't recall.

Q: Did you ever talk with any members of the family?

A: I don't recall.

Q: Did you ever find out about his childhood?

27

with Pope's untested penalty-phase allegations, and little, if anything else to consider. In the face of this procedural history, together with the substance of the claims, we are compelled to conclude that the district court erred in granting habeas relief on this barren record, and moreover, abused its discretion in denying Pope an evidentiary hearing to develop his claims. We, therefore, vacate the district court's decision, and remand the case with instructions for the district court to hold an evidentiary hearing.

AEDPA prohibits the district court from holding an evidentiary hearing "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings" unless certain circumstances are shown. 28 U.S.C. § 2254(e)(2).[11]

A: I do not recall.

[11] Section 2254(e)(2) provides in full:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that --

    (A) the claim relies on --

        (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

    (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable

However, "[b]y the terms of its opening clause the statute applies only to prisoners who have 'failed to develop the factual basis of a claim in State court proceedings.'"  Williams v. Taylor, 529 U.S. 420, 430 (2000) ("Michael Williams") (quoting 28 U.S.C. § 2254(e)(2)).  The Supreme Court has held, however, that in the context of this section, "failed to develop" connotes fault on the part of the petitioner.  Id. at 431-32 ("'[F]ail' connotes some omission, fault, or negligence on the part of the person who has failed to do something. . . .  [A] person is not at fault when his diligent efforts to perform an act are thwarted, for example, by the conduct of another or by happenstance.").  Therefore, "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."  Id. at 432.  "[A] petitioner cannot be said to have 'failed to develop' relevant facts if he diligently sought, but was denied, the opportunity to present evidence at each stage of his state proceedings."  Breedlove v. Moore, 279 F.3d 952, 960 (11th Cir. 2002).  After all, while AEDPA promotes principles of comity, "comity is not served by saying a prisoner 'has

factfinder would have found the applicant guilty of the underlying offense.
28 U.S.C. § 2254(e)(2).

failed to develop the factual basis of a claim' where he was unable to develop his claim in state court despite diligent effort." Michael Williams, 529 U.S. at 437.

## A. Diligence

Diligence "for purposes of the opening clause [of § 2254(e)(2)] depends upon whether the prisoner made a reasonable attempt, in light of information available at the time, to investigate and pursue claims in state court." Crawford v. Head, 311 F.3d 1288, 1329 (11th Cir. 2002) (quoting Michael Williams, 529 U.S. at 435). "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." Michael Williams, 529 U.S. at 437.

In general, our precedent says that when a petitioner requested an evidentiary hearing at every appropriate stage in state court and was denied a hearing on the claim entirely, the petitioner has satisfied the diligence requirement for purposes of avoiding Section 2254(e)(2). See Valle v. Sec'y for Dep't of Corr., 459 F.3d 1206, 1216 (11th Cir. 2006) (diligence requirement satisfied where petitioner "attempted to secure an evidentiary hearing in the state courts" on his equal protection and due process claims); Breedlove, 279 F.3d at 960 (diligence requirement satisfied where petitioner "sought an evidentiary hearing on [the relevant claim] at every stage of his state proceedings" yet "[t]he state

30

courts denied him the opportunity to present evidence related to [the] claim"). By contrast, where a petitioner was granted an evidentiary hearing or other means of presenting evidence to the state court on the particular claim, and the petitioner failed to take full advantage of that hearing, despite being on notice of and having access to the potential evidence and having sufficient time to prepare for the hearing, that petitioner did not exercise diligence in developing the factual foundation of his claim in state court.[12]

_____

[12] See, e.g., Ward, 592 F.3d at 1160 (district court's finding that petitioner failed to exercise diligence was not clear error, where petitioner was granted state court evidentiary hearing and "was afforded approximately three years to secure affidavits and witness testimony prior to" the hearing but failed to submit relevant evidence, despite the fact that he "managed to submit numerous exhibits and affidavits during the course of his hearings"); Chandler v. McDonough, 471 F.3d 1360, 1362 (11th Cir. 2006) (per curiam) (petitioner failed to exercise diligence in developing other evidence of claim, where petitioner "was given an evidentiary hearing on the claim in state court" and petitioner "also proffered in the state collateral proceeding a 195-page report in two parts by his expert on the issue"); Arthur v. Allen, 452 F.3d 1234, 1248 (11th Cir. 2006) (petitioner failed to exercise diligence where "[h]e failed to pursue the testing of the requested crime-related physical evidence during his three trials or through a state postconviction relief petition"); McNair v. Campbell, 416 F.3d 1291, 1298-1300 (11th Cir. 2005) (petitioner failed to exercise diligence where state court granted a hearing but denied his belated requests for expert funds because those requests were untimely, he could have developed evidence in less costly ways but did not, and he did not pursue the argument on state collateral appeal); Hall, 310 F.3d at 697-98 (district court's finding that petitioner failed to exercise diligence was not clear error where state habeas court conducted a full-day evidentiary hearing, at which an expert "gave extensive testimony speculating about the kinds of psychological problems that afflict Hall," and petitioner's trial counsel "gave extensive testimony about their representation of Hall," and petitioner's state habeas counsel "had eight months to prepare and failed to ask the court for access for psychological testing until four days before the hearing"); Isaacs v. Head, 300 F.3d 1232, 1249-50 (11th Cir. 2002) (district court's finding that petitioner failed to exercise diligence was not clear error where petitioner was aware of evidentiary issue, and could have developed, but did not, the factual record on at least three separate occasions on which he was granted the opportunity to present evidence to the state court).

Here, Pope exercised diligence in attempting to develop the factual basis of his penalty-phase claims before the state court. As the record amply shows, Pope requested an evidentiary hearing on these claims at every appropriate stage of the state court collateral proceeding. First, in the state trial court, Pope raised his ineffectiveness claims, as well as his request for an evidentiary hearing, as required by the rule applicable at the time Pope filed his Rule 3.850 motion. To plead a colorable claim for ineffective assistance of counsel, the Rule 3.850 movant must allege, in a "brief statement," facts that would establish that counsel's performance was deficient, and that this deficient performance caused prejudice to the defendant. Spera v. State, 971 So. 2d 754, 757-58 (Fla. 2007) (citing Strickland, 466 U.S. at 687, 694).

The Florida Supreme Court has further explained:

A defendant may not simply file a motion for postconviction relief containing conclusory allegations that his or her trial counsel was ineffective and then expect to receive an evidentiary hearing. The defendant must allege specific facts that, when considering the totality of the circumstances, are not conclusively rebutted by the record and that demonstrate a deficiency on the part of counsel which is detrimental to the defendant.

Kennedy v. State, 547 So. 2d 912, 913 (Fla. 1989) (per curiam). However, "[t]he strong language of the criminal rule that the motion or record must 'conclusively show that the prisoner is entitled to no relief' mandates that the trial court avoid

32

summarily denying relief without a hearing" so long as the motion "presents a colorable claim for relief." Thames v. State, 454 So. 2d 1061, 1065 (Fla. Dist. Ct. App. 1984) (per curiam) (quoting Fla. R. Crim. P. 3.850(d)); see also Gaskin v. State, 737 So. 2d 509, 516 & n.17 (Fla. 1999) ("[A]n evidentiary hearing is presumed necessary absent a conclusive demonstration that the defendant is entitled to no relief. . . . [W]e strongly urge trial courts to err on the side of granting evidentiary hearings in cases involving initial claims for ineffective assistance of counsel in capital cases."), receded from on other grounds, Nelson v. State, 875 So. 2d 579 (Fla.2004).

As for the deficient performance prong of Pope's penalty-phase Strickland claims, Pope's Rule 3.850 motion argued that "Eber failed to present any evidence of mitigating circumstances during the penalty phase of defendant's trial other than the standard plea of mercy from the defendant's mother," and that "Eber did little or nothing to develop evidence of such mitigating factors such as defendant's psychological history, performance in the military, or his capacity for rehabilitation." (Emphases added). Petitioner's motion also alleged that the prosecutor "made prejudicial and improper comments" -- including telling the jury that Pope "had expressed a preference for the death penalty -- even though that preference had been voiced outside the presence of the jury and was wholly

33

irrelevant to any issue before them," but "Eber improperly chose not to voice any objection." As for prejudice, Pope alleged that Eber's "failure to present any other mitigating circumstances increased the likelihood that the jury would return an advisory sentence of death. . . . But for this failure of proof, there is a reasonable probability that the jury would have recommended life for the killing of Walters." And, Pope said, "[t]he failure of Eber to object to these . . . prosecutorial comments . . . prejudiced defendant and deprived him of the fair and impartial trial guaranteed him by the Federal and State Constitutions."

While these allegations are surely brief, they are more than merely conclusory, see Kennedy, 547 So. 2d at 913, and they sufficiently made Pope's case for an evidentiary hearing. Indeed, given Pope's allegations that trial counsel failed to proffer any mitigating evidence at the penalty phase, aside from testimony from Pope's mother, or to make any objection to the prosecutor's stark comment that Pope preferred to die, it is very hard to say that the record conclusively refuted Pope's claim.

What's more, the state trial court never held that Pope's penalty-phase claims failed to meet the evidentiary hearing requirements of Rule 3.850. Rather, its ruling suggests otherwise. In order for a court to deny claims because they were "conclusively" refuted by the record, the Florida rule directs the court to

34

attach to its order "a copy of that portion of the files and records that conclusively shows that the movant is entitled to no relief." Fla. R. Crim. P. 3.850(d). Florida courts have found that the propriety of such a denial can only be determined by reference to those record excerpts that were actually attached. See Muniz v. State, 18 So. 3d 1140, 1141-42 (Fla. Dist. Ct. App. 2009) (per curiam); Thames, 454 So. 2d at 1065-66. Since Pope's trial court attached no record excerpts -- much less any that "positively refuted" the claim, Connor v. State, 979 So. 2d 852, 868 (Fla. 2007) (per curiam) -- we cannot conclude that the state trial court denied Pope Rule 3.850 relief on this basis.

Moreover, to the extent it could be argued that the state trial court denied Pope's claim because it was facially insufficient, the court's very order undermines this possibility. "A determination of facial sufficiency . . . rest[s] [only] upon an examination of the face . . . of the postconviction motion. . . . [T]he evidence in the record will ordinarily be irrelevant to such an evaluation." Spera, 971 So. 2d at 758 (emphasis omitted) (quotation omitted). Yet, the state court, in denying Pope's claims, relied on "the abundant evidence against the Defendant, together with the remainder of the transcript which reflects a very effective defense on behalf of the Defendant." Undeniably, this ruling went beyond the face of Pope's motion.

35

Pope again raised his ineffectiveness arguments on appeal to the Florida Supreme Court and again requested an evidentiary hearing on his claims, but he was denied a hearing once more. Pope, 569 So. 2d at 1245. Like the state trial court, the Florida Supreme Court neither attached record excerpts nor constrained its analysis to the face of Pope's motion. Instead, the court explained that it had "reviewed the motions, files, and records in this case and agree[d] with the trial court that they conclusively demonstrate that Pope is entitled to no relief in connection with the above claims." Id.

Based on thorough review of the record, as well as the state courts' treatment of Pope's claims, we cannot fairly say that Pope did not properly pursue an evidentiary hearing at each stage of his state court proceedings. In the face of his repeated efforts to obtain an evidentiary hearing, we conclude that Pope exercised diligence in attempting to develop the factual basis of his claims in the state courts. See Valle, 459 F.3d at 1216; Breedlove, 279 F.3d at 960.

**B.    The Substance of Pope's Allegations**

Once a petitioner has established diligence, a federal court may grant an evidentiary hearing without regard to the strictures of 28 U.S.C. § 2254(e)(2), but only if the petitioner has "proffer[ed] evidence that, if true, would entitle him to relief." Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999); accord Schriro v.

Landrigan, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.").

In the federal district court, Pope has proffered the following substantial body of evidence that he would develop if granted an evidentiary hearing. As for Strickland performance, Pope has alleged, inter alia, that his trial counsel, Eber, did no penalty-phase mitigation investigation whatsoever, even though Eber knew, among other things, that Pope suffered from post-traumatic stress disorder ("PTSD") and heavy drug abuse. We recognize that Pope had instructed Eber not to present mitigating evidence, and that a mentally competent defendant's instruction not to investigate or not to present mitigating evidence may make counsel's decision not to do so reasonable. See, e.g., Cummings v. Sec'y for Dep't of Corr., 588 F.3d 1331, 1356-59 (11th Cir. 2009) (collecting cases). Notably, however, we have previously found counsel's performance deficient where he acceded to his client's instructions not to investigate or present mitigating evidence despite his belief that his client had mental health issues. Thompson v. Wainwright, 787 F.2d 1447, 1451-52 (11th Cir. 1986); see also Blanco, 943 F.2d at 1500-03 (deeming counsel's failure to investigate to be

37

deficient performance when counsel conducted no pretrial investigation, even though defendant had provided information on his background and was "noticeably morose and irrational" when instructing counsel not to present any mitigation witnesses).   This is especially true when in doing so the "attorney foregoes a defendant's only plausible line of defense." Foster v. Dugger, 823 F.2d 402, 407 n.16 (11th Cir. 1986).

Moreover, in many of the cases where counsel's decision to forego investigating or presenting mitigating evidence based on a competent client's clear instruction has been considered effective assistance, there was ample testimony regarding counsel's strategic decision not to present mitigating evidence, and counsel had explained the mitigating evidence to the defendant.  See, e.g., Reed v. Sec'y, Fla. Dep't of Corr., 593 F.3d 1217, 1240 (11th Cir. 2010); Cummings, 588 F.3d at 1361; Newland v. Hall, 527 F.3d 1162, 1209 (11th Cir. 2008).[13]  And, in the cases collected and described in Cummings, the records were clear that the

_____

[13] Pope argues that because Eber lacked litigation or capital litigation experience at the time of trial, "any purported 'strategy' of Mr. Eber's should be given little, if any deference." However, while we have held that "the presumption that [experienced trial counsel's] conduct [is] reasonable is even stronger," Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc) (emphasis added), we still give some deference to counsel's conduct even if he lacks experience.  As we have recognized, "inexperienced does not mean ineffective." Id. at 1316 n.18 (citing United States v. Cronic, 466 U.S. 648, 665 (1984)).

defendants had instructed counsel to forego not only the presentation of mitigating evidence, but also its <u>investigation</u>.

Here, the record is wholly undeveloped concerning Eber's perceptions of Pope's mental health, what instructions, if any, Pope may have given Eber about investigating mitigating evidence, and how an investigation may have changed Pope's views on mitigating evidence, as well as what strategy, if any, Eber had for Pope's mitigation investigation or presentation. Without this record, we are left with Pope's express allegations that Eber utterly failed to investigate or prepare for the penalty phase of the trial, never interviewed readily available witnesses who had been present during the trial, and specifically admitted that he recalled doing no mitigation investigation. Eber failed to do so, says Pope, even though Eber was aware of at least some of Pope's mental health issues, including PTSD.

Significantly, Pope also alleges that Eber improperly failed to object to the following statement made by the prosecutor in closing arguments to the jury during the penalty phase: "Incidentally, Mr. Pope has announced that he would rather receive a death penalty than life imprisonment."[14] As the Florida Supreme

---

[14] Pope also makes vague claims about other "patently improper statements by the prosecutor and the court" to which Eber failed to object during the guilt and penalty phases of trial. Because Pope has utterly failed to explain -- other than incorporating by reference arguments he made in the district court -- which statements were "patently improper" or how they prejudiced his case, we do not address them. See Anderson v. Sec'y for Dep't of Corr., 462 F.3d 1319, 1331 (11th Cir. 2006) (holding that a death penalty petitioner was not entitled to a

Court found -- in ruling on Pope's habeas petition alleging ineffectiveness of appellate counsel -- the prosecutor's comments in the penalty phase closing argument were "clearly improper," and "the comment on the petitioner's preference for death" was "[t]he most bothersome." Pope, 496 So. 2d at 803. In short, Pope has painted a picture for us in which trial counsel did not prepare for the penalty phase of his trial; put forth little, if any, mitigating evidence, although there was ample evidence available; and allowed the jury to hear, without objection, that Pope preferred to die.

As for prejudice, Pope has alleged that because trial counsel failed to object to the prosecutor's comment to the jury that Pope preferred the death penalty, it was manifestly easier for the jury to recommend death. In addition, he has alleged that due to trial counsel's failure to conduct any penalty-phase investigation, the jury was not made aware that Pope suffered an abusive and impoverished childhood; exhibited many positive personality traits; began experimenting with drugs as a result of his Vietnam experience; escalated his drug use after he returned home; continued to suffer from the consequences of the war; and

COA by incorporating by reference arguments made to the district court); Brownlee v. Haley, 306 F.3d 1043, 1059 (11th Cir. 2002) ("A petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they 'were outside the wide range of professionally competent assistance.'" (emphasis added) (quoting Strickland, 466 U.S. at 690)).

40

exhibited substantial mental health issues, including post-traumatic stress disorder, organic delusional disorder, substance abuse disorder, and bipolar disorder. In particular, Pope claims that Eber failed to explain to the jury how Pope's Vietnam experiences affected his drug use, his psychological state, and the actions Pope allegedly took during the weekend of the murders. The jury also did not hear about the peculiarities of Pope's mental state, and how because of Pope's pre-Vietnam childhood and mental disorders, Pope was more dramatically affected by these things than the average Vietnam veteran would have been. This is significant, since our courts have placed great importance on the impact of military service as mitigation -- recognizing not only that "[o]ur Nation has a long tradition of according leniency to veterans in recognition of their service, especially for those who fought on the front lines," but also that the relevance of "extensive combat experience is not only that he served honorably under extreme hardship and gruesome conditions, but also that the jury might find mitigating the intense stress and mental and emotional toll that combat took on [the defendant]." Porter v. McCollum, 130 S. Ct. 447, 455 (2009).

Nor did the jury hear that, according to Pope's experts, his behavior at the time of the murders satisfied two statutory mitigating circumstances -- (1) extreme emotional or mental disturbance, see Fla. Stat. § 921.141(6)(b); and (2) diminished

41

capacity to conform his conduct to the requirements of the law, see id. § 921.141(6)(f) -- or that several non-statutory mitigating circumstances, including his impoverished and abusive childhood and his capacity for rehabilitation, applied. Indeed, Pope has alleged, through his experts' affidavits, that his mental illnesses, both singularly and in combination, impaired all aspects of his cognitive and emotional processes and left him predisposed to act in an irrational manner when confronted with even minimal stressors. His experts say that his chronic and acute abuse of drugs also impaired his critical judgment, perception of others, and interaction with others, so that Pope's judgment was impaired to a substantial degree at the time of the murders. The experts further opine that the combination of increasing confusion and stressful events caused gross impairment of Pope's already impoverished cognitive ability and of his already severely compromised ability to act volitionally. According to these experts, his drug dependence influenced his actions and caused him to behave in violent and unpredictable ways completely inconsistent and at odds with his prior history and background of nonviolence. As a result, the experts opine, these conditions affected Pope's behavior by potentiating that he would overreact in an irrational, combative, and even violent way, with no appreciation for the consequences of his behavior.

42

We agree with Pope that these allegations, considered together, are powerful, and if he is able to prove they are true, he would be entitled to habeas relief. See Hill, 175 F.3d at 922. However, we do not know the veracity of his claims because Pope has never been afforded an opportunity to develop their factual basis in the crucible of an evidentiary hearing -- nor, just as importantly, has the State had the opportunity to challenge them in an adversarial hearing. As a result, the district court's denial of an evidentiary hearing amounted to an abuse of discretion, especially since the district court ultimately granted habeas relief based on the wholly untested allegations Pope sought to develop in the hearing.[15] Therefore, the district court's decision to grant habeas relief on Pope's penalty-phase claims without testing these allegations in an evidentiary hearing is vacated, and the case is remanded with instructions to hold an evidentiary hearing on Pope's two penalty-phase ineffectiveness claims.[16]

_____

[15] We recognize that the district court observed that based on Eber's 1987 deposition, it may be futile to attempt to explore some of the facts underlying Eber's performance -- including, for example, Eber's trial strategy during the guilt phase. However, we cannot ignore the fact that the 1987 deposition barely touched on Eber's performance during the penalty phase of the trial. Nor, moreover, can we ignore that there are myriad other facts going to Eber's effectiveness -- including the details surrounding Pope's mental health -- that the State has not been, and should be, able to test in an evidentiary hearing.

[16] Finally, we observe that we have not resolved whether AEDPA deference applies to the state court rulings in this case once the district court has held an evidentiary hearing. Notably, neither the Supreme Court nor our Court has said which standard of review applies to evidence properly developed in a federal hearing, although both have recognized this as an open question. See Holland v. Jackson, 542 U.S. 649, 653 (2004) (per curiam); LeCroy v. Sec'y, Fla. Dep't of

# V.

Pope also claims that he was denied the effective assistance of counsel during the guilt phase because his counsel, Eber: (1) failed to properly investigate and prepare for Pope's case; (2) unreasonably failed to object to various things throughout the trial, including the introduction of guns unrelated to the three murders and the admission of Buddy Lagle's videotaped deposition; (3) failed to effectively cross-examine Eckard; (4) failed to interview and properly prepare defense witnesses, including Pope himself; and (5) failed to present certain evidence of Pope's innocence.[17]  Pope also argues that the district court erred in considering his guilt-phase <u>Strickland</u> claims piecemeal, rather than considering

_____

<u>Corr.</u>, 421 F.3d 1237, 1263 (11th Cir. 2005).  Because the answer may depend on what evidence is uncovered in the federal court hearing, <u>see</u> <u>LeCroy</u>, 421 F.3d at 1263 n.30 (noting that deference may not apply "[i]f the federal evidentiary hearing uncovers new, relevant evidence that impacts upon a petitioner's claim(s) and was not before the state court," since "it is problematic to ascertain how a federal court would defer to the state court's determination," but also recognizing AEDPA's strong preference for deference), we believe that the federal district court should address this question in the first instance.

[17] It is difficult to determine exactly which guilt-phase ineffectiveness claims are actually before this Court.  The district court granted a COA on this issue: "Petitioner's argument in Ground I that trial counsel failed to properly investigate and prepare, thereby causing prejudice to Petitioner and entitling him to a new trial."  Ground I, as ruled on by the district court, contained the five sub-issues listed above, and while it is somewhat of a stretch to say that all of these claims are part of a failure to properly investigate and prepare, we will nonetheless address them since the district court's COA was vague and the State does not claim that Pope did not receive a COA on all five of these sub-issues.  However, Pope does not even mention in this Court two sub-issues originally included in Ground I -- (1) counsel's use of the PTSD defense at the guilt phase; and (2) counsel's failure to object to a recess during the jury's deliberations, failure to request the sequestration of the jury, and failure to object to the introduction of a newspaper in the jury room -- and they are therefore abandoned.  <u>See</u> <u>Isaacs</u>, 300 F.3d at 1238.

the cumulative impact of trial counsel's errors. As we've noted, the state court summarily rejected the majority of these claims when it simultaneously rejected Pope's penalty-phase claims.

After our thorough review of the entire record, we conclude that the Florida Supreme Court's decisions rejecting these claims were neither contrary to nor an unreasonable application of Supreme Court law. Moreover, because his allegations fall far short of satisfying AEDPA, and because the state court did in fact grant him two different evidentiary hearings addressing defense counsel's performance at the guilt phase, Pope has failed to show that he is entitled to an evidentiary hearing to explore further any of these guilt-phase claims. In reaching this conclusion, we apply AEDPA deference to the state court's decisions since, as we have repeatedly held, AEDPA deference is due even if the state court decision was summary in nature. See Parker v. Sec'y for Dep't of Corr., 331 F.3d 764, 776 (11th Cir. 2003); accord Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011).

At the outset, however, we address the State's repeated argument that Pope did not exhaust these claims in state court. As we've discussed earlier, the Supreme Court has instructed us that if "the substance of a federal habeas corpus claim [was] first . . . presented to the state courts," then the claim is exhausted, "despite variations in the . . . factual allegations urged in its support." Picard, 404

45

U.S. at 277-78. Thus, "courts should exercise flexibility in determining whether defendants have met [the exhaustion] requirement." Cummings, 862 F.2d at 1507; see also Henry, 197 F.3d at 1367 ("The exact presentation of the claims in the state and federal courts may vary some.").

As we see it, Pope has exhausted his guilt-phase ineffectiveness claims in state court. While not every piece of factual support alleged in federal court was alleged in state court, Pope made very similar allegations before the state and federal courts, and any discrepancies are insignificant.[18] Plainly, there was enough for "the reasonable reader [to] understand [each] claim's particular legal basis and specific factual foundation," Kelley, 377 F.3d at 1344-45, and thus we reject the argument that Pope did not exhaust the guilt-phase claims.

Turning to the merits, we observe again that the majority of Pope's guilt-phase claims were rejected summarily by the Florida Supreme Court; however, the Florida Supreme Court expressly addressed Pope's claim that Eber unreasonably

---

[18] Thus, for example, while Pope did not specify when presenting his first claim to the state court that trial counsel Eber did not recall his meeting with Pope's prior counsel, McNeil, or that Eber unreasonably failed to hire an investigator, Pope's general allegation that Eber was unable to properly prepare, along with other instances of Eber's failure to investigate or prepare, was sufficient to exhaust the claim. Likewise, for the fifth claim, while Pope did not specify in the state court that Eber did not recall from whom he had obtained a psychologist's name, nor whether he had met with certain other witnesses beforehand, Pope's general allegation that Eber was unable to properly prepare, along with the claim that Eber failed to prepare Pope to testify, was sufficient to exhaust this claim.

46

failed to object to the admission of the Lagle deposition in lieu of a trial appearance. In rejecting Pope's challenge on direct appeal, the Florida Supreme Court concluded that the State had met its burden of proving Lagle's unavailability so that his deposition could be read at trial, and pointed to a statement from Eber that he did not doubt Lagle's unavailability. See Pope, 441 So. 2d at 1076. Pope raised the issue again through the ineffective assistance claim in his Rule 3.850 motion, and the Florida Supreme Court again denied relief, finding that Lagle was in fact unavailable, and that Eber could not be "ineffective for stipulating to a proven fact: the unavailability of the witness." Pope, 569 So. 2d at 1245-46. On federal habeas review, the district court observed that Eber had researched the issues surrounding Lagle's testimony, and it concluded that the Florida Supreme Court's resolution of this claim was not contrary to or an unreasonable application of Strickland.

The district court further concluded that Pope's remaining guilt-phase claims also failed to meet this standard. In rejecting the claim that Eber failed to prepare for the case, the district court noted that Eber had interviewed witnesses, taken or read witness depositions, and believed that he was ready for trial. As for the claim that Eber failed to properly cross-examine state witnesses, the district court reiterated that Eber had prepared for trial, and noted the ample discretion

47

afforded to counsel in deciding how to cross-examine witnesses. As for the claim that Eber failed to prepare defense witnesses, the district court specifically observed that Eber had met with and prepared Pope for trial. As for the claim that Eber failed to present certain evidence of Pope's innocence, the district court concluded that even though Eber could not recall his strategy regarding alternate theories of the defense, the claim failed because there was no reasonable probability that the additional evidence would have affected the outcome of Pope's case. Finally, as for Pope's cumulative error claim, the district court said that "[f]or the reasons previously articulated in this Order, the Court has determined that the [guilt][19] phase of the trial was not rendered fundamentally unfair and, therefore, declines to entertain his cumulative impact claim." Thus, the district court concluded that Pope had not shown that the Florida Supreme Court's rejection of his guilt-phase claims was contrary to or an unreasonable application of Strickland.

We agree with the comprehensive opinion of the district court, and reject Pope's guilt-phase claims. All in all, Pope essentially complains that Eber failed to investigate, present evidence, and cross-examine the State's star witness Eckard

---

[19] In its order, the district court actually said that it did not find the "penalty" phase of the trial to be fundamentally unfair, which is an obvious typographical error, since it granted habeas relief as to the penalty phase of Pope's trial.

about various issues that Eber actually did introduce at trial and did use to contradict Eckard's testimony. Pope also says that Eber did not properly object to the introduction of evidence of Pope's other guns or of Lagle's deposition (even though Eber used the evidence that Pope owned other guns affirmatively in his defense, and even though Lagle was later found to be in fact unavailable), and that Eber did not properly prepare Pope and other defense witnesses for their testimony (although Pope fails to say what might have been accomplished by additional preparation). In short, Pope has failed to show that the state court's rejection of his guilt-phase ineffectiveness claims was contrary to or an unreasonable application of Strickland.

As for cumulative error, we have declined to consider this kind of claim where a petitioner's "state-court trial was not fundamentally unfair." Cargill v. Turbin, 120 F.3d 1366, 1386 (11th Cir. 1997). Because Pope has not shown that the guilt phase of his trial was fundamentally unfair, we need not consider his cumulative-error claim. But even if we were to consider Pope's guilt-phase claims in concert, there is no constitutional error, much less prejudicial error.

Indeed, as the record shows, the trial evidence of Pope's guilt was strong. All three victims had been shot with exploding ammunition, rendering a ballistics comparison impossible. However, parts of an AR-7 rifle were found in the canal

49

near Walters's body, and the spent shell casing under Di Russo's body had been fired from an AR-7 weapon. Ultimately the police were able to show that Doranz had purchased an AR-7 rifle for Pope shortly before the murder. Pope admitted being with Doranz the evening Doranz was killed. And Lagle told police he had made a silencer for an AR-7 rifle at Pope's request.

In addition, Eckard's testimony directly implicated Pope in the murders. She said that Pope had arranged a drug deal with Doranz and Di Russo, and that on the day of the Doranz and Di Russo murders, Pope and Doranz had convinced Walters to go with Eckard to the apartment where Pope had been staying. Eckard testified that later the same night, Pope arrived at the apartment and told the women that there had been trouble and that Doranz had been injured, but that it was best for Walters to stay away from Doranz for a while. Eckard said she knew that Di Russo and Doranz were dead, and that she had known Pope intended to kill them at that point. According to Eckard, Walters then checked into a nearby motel, where Pope supplied her with quaaludes and cocaine. On Sunday, Pope told Walters he would take her to see Doranz. Eckard testified that Pope had told her that he knew he had to get rid of Walters but that he regretted it because he had become fond of her. Eckard said that when Pope returned, he described Walters's murder and how the gun had broken. Eckard also said that she had gone with

50

Pope to the scene of the crime the next day to collect fragments of the broken stock and to look for the missing trigger assembly and receiver.

In light of the powerful showing of guilt, and the fact that the jury chose to believe Eckard's testimony (and not Pope's) -- even though Eckard was impeached and contradicted during the trial -- we cannot say there is a reasonable probability of a different outcome, had trial counsel taken any of the steps that Pope has now raised. Accordingly, we cannot conclude that the Florida Supreme Court's rejection of any of Pope's guilt-phase ineffectiveness claims was contrary to or an unreasonable application of Supreme Court law.

We, therefore, **AFFIRM** the district court's denial of habeas relief as to Pope's guilt-phase ineffectiveness claims, but **VACATE** the district court's grant of habeas relief concerning Pope's penalty-phase ineffectiveness claims, and **REMAND** for the district court to hold an evidentiary hearing on the penalty-phase claims.