[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-10116

_____

D.C. Docket No. 2:14-cv-14117-RLR

JORGE EMMANUEL MARTINEZ,

Petitioner–Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent–Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 11, 2017)

Before JORDAN and JILL PRYOR, Circuit Judges, and COOGLER,[*] District
Judge.

COOGLER, District Judge:

_____

[*] The Honorable L. Scott Coogler, United States District Judge for the Northern District of
Alabama, sitting by designation.

Jorge Emmanuel Martinez ("Martinez") appeals the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and its refusal to hold an evidentiary hearing regarding the ineffective assistance of Martinez's trial counsel for failure to investigate an alibi defense. Martinez entered a plea of *nolo contendere* to a charge of lewd and lascivious battery under Fla. Stat. § 800.04(4)(a) based on improper sexual contact with a minor. After careful review of the record and the briefs of the parties, and having the benefit of oral argument, we affirm the district court on all issues raised on appeal.

## I.

The factual information and procedural history that follow are derived from the record before the state post-conviction courts that adjudicated Martinez's state petition and from Martinez's federal petition filed in the district court.

## A.

Martinez first met the alleged victim in this case, D.G.D., over the internet in early summer 2006. At the time, the two were both minors; D.G.D. was fourteen years old, and Martinez was seventeen years old. D.G.D.'s parents did not approve of their daughter's relationship with Martinez, so throughout the summer, Martinez and D.G.D. met without her parents' knowledge. More often than not, the two would meet alone, although they sometimes saw each other in social settings with others in their hometown of Sebring, Florida. At some point during the summer,

the relationship became sexual, although Martinez and D.G.D. never had sexual intercourse. That fall, Martinez began college at the University of South Florida ("USF") and continued to communicate with D.G.D. through phone calls and the internet. Martinez turned eighteen on October 29, 2006. D.G.D. alleges that two days later, on Tuesday, October 31, 2006, she met Martinez in the woods near her house, and the two engaged in sexual contact short of intercourse.

D.G.D. claims that a friend of Martinez's drove Martinez from USF's campus in Tampa, Florida, to meet with D.G.D. in Sebring, Florida, the night of October 31. According to D.G.D., Martinez's friend, Diana Derek ("Derek"), got lost on her way to pick Martinez up after the encounter, and D.G.D. spoke with Derek on Martinez's cellphone to give Derek directions to their location. A police report in the record states that Derek gave a similar account to the police shortly after the incident, and that her cellphone records indicated that eight calls were placed between Derek's cellphone and Martinez's cellphone on October 31, 2006. The last call was placed at 11:26 PM, less than half an hour after D.G.D. states that the sexual contact occurred. This is the final alleged meeting between Martinez and D.G.D. and the only assertion of sexual contact between the two after Martinez turned eighteen.

**B.**

3

D.G.D's parents first reported the October 31, 2006, incident to law enforcement on November 13, 2006. They also sought a restraining order against Martinez for stalking D.G.D, which was denied. After an investigation that consisted of interviews with D.G.D., Martinez, and several witnesses, including Derek, law enforcement declined to initiate criminal proceedings against Martinez because there was insufficient evidence to file charges against him. At D.G.D.'s parents' request, the investigation was re-opened in November 2007.

Law enforcement interviewed Martinez once again on December 10, 2007. The interview lasted several hours and was not recorded, but at some point, Martinez admitted that he had engaged in sexual contact with D.G.D. after his eighteenth birthday. Martinez later contended that this confession was coerced because law enforcement represented to him that if he admitted to the sexual contact, "the incident would be put to bed and no adverse consequence would follow." The next day, on December 11, 2007, Martinez contacted law enforcement and recanted his previous statement by denying any sexual contact with D.G.D. after his eighteenth birthday. Martinez also asserted an alibi for October 31, 2006, stating that he would not have been in Sebring, Florida, visiting D.G.D. because it was homecoming week at USF. However, he told the investigator that he did not know of any witnesses who could corroborate that alibi.

4

In early 2008, Martinez's family retained attorney Robert Gray ("Gray") to represent him. Martinez was charged by information on February 21, 2008, with lewd or lascivious battery under Fla. Stat. § 800.04(4)(a), for sexual contact that occurred between October 31, 2006, and November 1, 2006. At the time the alleged offense occurred, the statute provided that anyone who "engage[d] in sexual activity with a person 12 years of age or older but less than 16 years of age" was guilty of lewd or lascivious battery and could be imprisoned for a maximum of fifteen years and required to register as a sex offender. On October 29, 2008, Martinez entered a plea of *nolo contendere* at a plea hearing, which the trial court accepted after reviewing with Martinez his signed plea form.

The court again discussed Martinez's plea at his sentencing hearing on January 28, 2009. When the prosecutor noted that Martinez had denied any sexual activity with D.G.D. in his sex offender evaluation, Martinez replied that he was innocent and that he had confessed to law enforcement because he wanted to bring an end to the criminal proceeding and the harassment he had experienced due to that proceeding. Gray then represented to the court that he had reviewed the potential constitutional challenge to Martinez's confession with Martinez and that he was able to provide "information regarding witnesses which would tend to cast doubt upon the circumstances that [were] alleged." However, Gray also stated that Martinez preferred to enter the *nolo contendere* plea than to proceed to trial and

5

risk incarceration, a statement that Martinez affirmed. Thus, on February 5, 2009, pursuant to the plea agreement, Martinez was sentenced as a youthful offender to two years' community control and four years' probation and was required to register as a sex offender.

Martinez did not then appeal his conviction but on March 20, 2009, filed a motion in the trial court to reduce or modify his sentence under Fla. R. Crim. P. 3.800(c). The motion was denied after a hearing on March 24, 2009. On October 30, 2009, Martinez, through counsel, filed a motion for post-conviction relief under Fla. R. Crim. P. 3.850. In this motion, Martinez asserted, among other claims, that Gray had provided ineffective assistance of counsel by not pursuing an alibi defense on Martinez's behalf. In support of his motion, Martinez attached sworn affidavits from Derek and another fellow USF student that, according to Martinez, prove that he did not meet with D.G.D. on October 31, 2006, but was instead nearly one hundred miles away on the campus of USF for its homecoming week at the time of the alleged sexual contact.

In her affidavit, which was sworn to on October 12, 2009, Derek confirmed that she drove Martinez to Sebring, Florida, to visit a friend. Derek spoke with the friend on the phone before the trip and noted that the girl was "excited" to see Martinez. Derek recollects, however, that this trip occurred prior to USF's homecoming. Another friend of Martinez's, Lynn Martrell McPhearson

6

("McPhearson"), stated in his affidavit, which was sworn to on July 31, 2009, that he saw Martinez during the day on October 31, 2006, because the two lived in the same dorm. McPhearson asserts that he took a photograph with Martinez before leaving for a Halloween party that night between 10:00 PM and 11:00 PM and saw Martinez in the dorm when he returned around 3:00 AM on November 1, 2006.

Pursuant to a court order, Martinez filed an amended motion for post-conviction relief on August 3, 2010, to which he attached the sworn statements from Derek and McPhearson and an additional affidavit from another friend and USF student, Sadiya Sassine ("Sassine"). Sassine stated in her affidavit, which was sworn to on January 26, 2010, that she saw Martinez at a party sometime in October 2006 and that he was wearing a costume. She also stated that Martinez was still at the party when she left and that she usually left parties in college between 1:30 AM and 2:00 AM. Martinez asserted that the testimony of these three witnesses demonstrated that he could not have been with D.G.D. in Sebring, Florida, the night of October 31, 2006, because he was nearly one hundred miles away in Tampa, Florida, on USF's campus that night. The state post-conviction court denied Martinez's claim without holding an evidentiary hearing in an order dated October 28, 2010, stating that Martinez had waived any defenses by entering the *nolo contendere* plea.

After an evidentiary hearing on Martinez's remaining grounds for post-conviction relief, the court denied Martinez's claims on April 6, 2011. Martinez appealed the denial to the Second District Court of Appeal. In his brief to that court, Martinez maintained that Gray's "[f]ailure to file [a] Motion to Suppress," "[f]ailure to investigate and present [the] alibi defense," "[f]ailure to properly advis[e] [Martinez] on the Romeo and Juliet Statute," and "[f]ailure to inform [Martinez] that he had thirty (30) days to set aside [the] *nolo contendere* plea" demonstrated "[t]he ineffectiveness of counsel in failing to investigate, research and advis[e] his client properly." The state appellate court stated in its opinion that it was addressing only the issue of whether Martinez's trial counsel had been ineffective by concluding that Florida's "Romeo and Juliet" statute did not apply to Martinez. It reversed the lower court on that issue and remanded the case so that the lower court could conduct an appropriate hearing to determine whether to apply the sex offender designation. The court discussed none of Martinez's other claims and ended its opinion with "Affirmed in part, reversed in part, and remanded." Martinez filed a motion for rehearing on March 22, 2013, asserting that the state appellate court had improperly failed to consider Martinez's other claims, including the claim related to the alibi defense. This motion was denied on April 29, 2013. Upon remand for consideration of the sex offender designation, the lower court conducted a hearing and at its conclusion required Martinez to register

8

as a sex offender because the testimony indicated that the sexual relationship was non-consensual. Martinez did not appeal this determination.

Martinez filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the Southern District of Florida on March 20, 2014. As grounds for his petition, Martinez alleges that he received ineffective assistance of counsel because his trial counsel failed to investigate an alibi defense, failed to move to suppress what Martinez contends was his illegally obtained confession, and failed to advise Martinez of his post-conviction rights. Martinez also argued that his post-conviction counsel had been ineffective by failing to preserve the issue of his trial counsel's ineffective assistance. At the time he filed his petition in federal court, Martinez continued to pursue alternative remedies in state court, such as seeking to have his probation modified or terminated early.[1] It is unclear whether Martinez is still actively seeking relief in state court, but his six-year sentence would have been fully served in early 2015, although the sex offender registration requirement remains.

United States Magistrate Judge Frank J. Lynch, Jr. issued a report and recommendation denying Martinez's petition—without an evidentiary hearing—on November 20, 2014. Martinez filed his objections to the report and

---

[1] Although we question whether Martinez actually exhausted his claim in the state courts before filing his federal petition, we will not address exhaustion because the Secretary affirmatively represented to the district court that the alibi claim was exhausted. *See* 28 U.S.C. § 2254(c), (b)(3).

recommendation on December 8, 2014. District Judge Robin L. Rosenberg summarily adopted the report and recommendation in an order issued on December 11, 2014. Martinez then applied for a certificate of appealability, which the district court granted "as to [his] claims concerning ineffective assistance of counsel" on April 22, 2015.

## II.

Martinez argues that Gray provided ineffective assistance of counsel because he failed to contact USF, at Martinez's request, to obtain a school calendar for the Fall 2006 semester and his class schedule for Tuesday, October 31 and Wednesday, November 1, 2006. Martinez claims that he attempted to obtain the documents himself at some point during Gray's representation of him, but the university's legal department informed him that his attorney needed to present the request since the documents were for use in pending criminal litigation. He also states that he asked Gray to request the documents and provided him with contact information for a university attorney named Henry Lavandera, but Gray never followed through with obtaining the documents. As a result, Martinez argues, he was "unaware of the existence of any exculpatory alibi witnesses" at the time he entered his *nolo contendere* plea. He contends that he did not "learn of the availability of an alibi defense" until his post-conviction counsel contacted USF and discovered that October 31, 2006, was during USF's homecoming week.

10

Because of this information, Martinez avers that he was able to obtain affidavits from Derek, McPhearson, and Sassine that accounted for his whereabouts that night. Had he known of these witnesses at the time he entered his plea, Martinez claims, he would have instead rejected the plea and proceeded to trial.

## A.

This Court reviews *de novo* the district court's "denial of a state prisoner's federal habeas petition." *Landers v. Warden, Attorney Gen. of Ala.*, 776 F.3d 1288, 1293 (11th Cir. 2015). However, where, as here,[2] the state court adjudicated the habeas petitioner's claim on its merits, we are prohibited from granting the petition "unless the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law . . .' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Id.* (quoting 28 U.S.C. § 2254(d)). This limited review mandates deference to the decisions of the state courts and is conducted on "the record . . . before the state court that adjudicated the claim on its merits." *Cullen v. Pinholster*, 563 U.S. 170, 181; 131 S. Ct. 1388, 1398 (2011). Even if we disagree with the state court's determination or consider it "incorrect," we cannot grant

---

[2] Both parties represent that Martinez's petition should be reviewed under § 2254(d), which by its terms applies only to an adjudication on the merits. We therefore assume without deciding that the Florida state courts addressed Martinez's claim on the merits.

11

relief unless the state court's decision was "unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473; 127 S. Ct. 1933, 1939 (2007).

Under this Circuit's precedent, the relevant state court "decision" to be reviewed under § 2254(d) is "the last adjudication on the merits," even if that adjudication provides no reasoned opinion. *Wilson v. Warden, Ga. Diagnostic Prison*, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc), *cert. granted sub nom.*, *Wilson v. Sellers*, No. 16-6855, 2017 WL 737820 (U.S. Feb. 27, 2017). In *Wilson*, a majority of the en banc court held that if the last adjudication does not explain the state court's reasoning, the federal court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 102; 131 S. Ct. 770, 786 (2011)). Stated more simply, we "must consider whether the outcome of the state court proceedings permits a grant of habeas relief." *Gill v. Mecusker*, 633 F.3d 1272, 1288 (11th Cir. 2011). Under *Wilson*, a reasoned state court opinion that precedes a summary affirmance may be an example of an argument to support the affirmance, but we cannot "assume that the summary affirmances of state appellate courts adopt the reasoning of the court below." 834 F.3d at 1238, 1239; *see Tharpe v. Warden*, 834 F.3d 1323, 1336 n.20 (11th Cir. 2016) (reviewing

Georgia Supreme Court's denial of certificate of probable cause using reasoning of lower court for denying post-conviction relief because "we must affirm if there is any reasonable basis for doing so and [the lower appellate court] provided such a reasonable basis").

Prior to *Wilson*, other panels in this Circuit "looked through" a summary affirmance and reviewed "the last reasoned state court decision" to address the issue. *See, e.g.*, *Adkins v. Warden, Holman CF*, 710 F.3d 1241, 1250 & n.6 (11th Cir. 2013), *cert. denied*, 134 S. Ct. 268 (2013). The *Wilson* majority rejected this "look through" approach for decisions rendered on the merits. 834 F.3d at 1235. It distinguished the Supreme Court's holding in *Ylst v. Nunnemaker*, 501 U.S. 797, 803; 111 S. Ct. 2590, 2594 (1991)—that we should presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment . . . rest upon the same ground"—as applicable only when the lower court applied a procedural default. *Wilson*, 834 F.3d at 1235. The Supreme Court recently granted certiorari in *Wilson*. *See Wilson v. Sellers*, No. 16-6855, 2017 WL 737820 (U.S. Feb. 27, 2017). Nonetheless, the en banc decision remains law in this Circuit unless and until the Supreme Court overrules it. *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).

**B.**

13

In denying Martinez post-conviction relief, the trial-level state court reasoned that Martinez had waived the opportunity to present his alibi defense by entering the *nolo contendere* plea. We do not disagree. *See United States v. Matthews*, 168 F.3d 1234, 1242 (11th Cir. 1999) ("[B]y accepting a guilty plea[,] a defendant waives all non-jurisdictional defenses."). However, Martinez argued below—and continues to argue—that he was denied effective assistance of counsel because his trial counsel failed to investigate his alibi defense.[3] He asserts that he would not have entered the plea and would have gone to trial if Gray had properly investigated the defense and informed him of the potential witnesses. We have previously held that an ineffective assistance of counsel claim that goes to the voluntary nature of the defendant's plea is not waived "simply by entering a plea" because this is contrary to *Hill v. Lockhart*, 474 U.S. 52; 106 S. Ct. 366 (1985). *Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348 (11th Cir. 2015). Rather, a defendant is entitled to adequate representation while considering whether to make a voluntary plea. *See Hill*, 474 U.S. at 56–57; 106 S. Ct. at 369. Thus, to the extent that the state post-conviction court found that Martinez's *nolo contendere* plea foreclosed his claim that his counsel was ineffective for failing to investigate

---

[3] In his amended motion to the state post-conviction court, Martinez styled his claim as follows: "Trial counsel provided ineffective assistance of counsel in failing to pursue a defense of alibi." He explained, "My counsel's performance was ineffective in not investigating my defense of alibi and I was prejudiced by his failure when I had a viable defense and should have gone to trial rather than plead to an offense that I did not commit."

14

the alibi defense and improperly advising him to enter into a plea agreement, that decision misapplies *Hill*.

Instead, pursuant to *Hill*, the Florida post-conviction courts should have evaluated "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases'" by applying the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668; 104 S. Ct. 2052 (1984). 474 U.S. at 56–57; 106 S. Ct. at 369; *see Arvelo*, 788 F.3d at 1348 (conducting the analysis in this manner). Nonetheless, we must uphold the state appellate court's summary affirmance if an alternate basis supports its denial of relief. *See Wilson*, 834 F.3d at 1235. We therefore assess Martinez's claim under *Strickland*, presuming that the state court "know[s] and follow[s] the law." *See id.* at 1238 (quoting *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015)).

## C.

In order to show that he was denied effective assistance of counsel in violation of the Sixth Amendment, a defendant must demonstrate both that his counsel's performance was deficient and that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; 104 S. Ct. at 2064. Counsel's performance is deemed to be deficient where it falls "below an objective standard of reasonableness" and is "outside the wide range of professionally competent assistance." *Johnson v. Sec'y, Fla. Dep't of Corr.*, 643 F.3d 907, 928 (11th Cir.

15

2011). This is a highly deferential standard, and a reviewing court presumes that counsel acted reasonably in his representation of the defendant. *Id.* Even where counsel's performance was deficient, to be successful on his claim, a defendant must also show that "but for his counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694; 104 S. Ct. at 2068).

A petitioner alleging prejudice with respect to the plea process must demonstrate a reasonable probability that he would have gone to trial rather than enter the plea, but for counsel's errors. *Lafler v. Cooper*, 566 U.S. 156, 163; 132 S. Ct. 1376, 1384–85 (2012). Further, the decision to reject the plea must have been "rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372; 130 S. Ct. 1473, 1485 (2010). Where the petitioner bases counsel's deficiency on his failure to investigate exculpatory evidence, we consider the likelihood that counsel would have changed the plea recommendation as a result of the investigation. *Hill*, 474 U.S. at 59; 106 S. Ct. at 370.

Applying *Strickland* under § 2254(d), "the question becomes whether 'there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Johnson*, 643 F.3d at 911 (quoting *Richter*, 562 U.S. at 105; 131 S. Ct. at 788). "[T]he question is not whether counsel's actions were reasonable." *Richter*, 562 U.S. at 105; 131 S. Ct. at 788.

16

Martinez has not demonstrated that Gray's performance was deficient. A defendant's counsel has a general duty "to reasonably investigate avenues of defense (or make a reasonable decision to not do so)." *Blankenship v. Hall*, 542 F.3d 1253, 1273 (11th Cir. 2008). Inherent in this duty to "conduct a substantial investigation into any . . . plausible lines of defense," *Fortenberry v. Haley*, 297 F.3d 1213, 1226 (11th Cir. 2002), is the notion that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation," *Strickland*, 466 U.S. at 690–91; 104 S. Ct. at 2066. The duty to investigate particular facts or defenses is thus not absolute, but counsel's decision not to investigate must be reasonable under the circumstances. *Everett v. Sec'y, Fla. Dep't of Corr.*, 779 F.3d 1212, 1249–50 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 795 (2016). The information that a defendant's attorney obtains from the defendant with regard to any possible defenses is relevant to this inquiry. *Pooler v. Sec'y, Fla. Dep't of Corr.*, 702 F.3d 1252, 1269–70 (11th Cir. 2012) (citing *Strickland*, 466 U.S. at 691; 104 S. Ct. at 2066). Counsel's performance is deemed to be deficient only if the petitioner can show that "no competent attorney" would have failed to pursue the defense, given the facts known to counsel at the time. *See Premo v. Moore*, 562 U.S. 115, 124; 131 S. Ct. 733, 741 (2011).

Here, the district court found that Gray's performance was not deficient because Gray was "generally aware of" potential alibi witnesses at Martinez's sentencing and because Martinez himself was in the best position to discover the witnesses. Reviewing the merits of the alibi, the district court concluded that the affidavits "d[id] not conclusively establish [Martinez's] innocence." Martinez points out that the record is void of evidence that Gray had investigated the alibi defense before Martinez entered his *nolo contendere* plea, but the Secretary responds that Martinez "had no viable alibi evidence" at that time and thus cannot prove that Gray performed deficiently by not adequately investigating the alibi.

Martinez concedes that he knew about a potential alibi defense at the time he pled *nolo contendere*. Indeed, he first asserted an alibi for the night of October 31, 2006, on December 11, 2007, the day after he made the allegedly coerced inculpatory statement to police. The police report detailing these statements, which itself is dated February 4, 2008, states that Martinez told the police that "the week of 10/31/06 was the USF Homecoming week and there was no way that he could have had the time to come to Sebring to be with [D.G.D.] then." Martinez indicated to the police at that time that he was unaware of any witnesses who could confirm he was in Tampa, rather than in Sebring, the night of the alleged lewd and lascivious battery.

18

Thus, Martinez had already asserted an alibi when Gray began to represent him in mid-February 2008. By his own account, Martinez shared with Gray the details of this alibi when requesting that Gray obtain the school calendar and his class schedule from USF. Once he learned of the possible alibi defense from his client, Gray had a professional duty either to investigate the alibi or to make a reasonable choice not to investigate it. *See Blankenship*, 542 F.3d at 1273. If "no competent attorney" would have made the choice not to further investigate the defense, then Gray's performance was deficient. *See Premo*, 562 U.S. at 124; 131 S. Ct. at 741.

Despite the fact that he told Gray about the existence of an alibi, Martinez was not able to suggest to Gray any witness who might be able to corroborate it. Nonetheless, Gray interviewed at least one of the individuals named as a potential witness in the police report but apparently did not consider his statements to be helpful to Martinez's case. Martinez supplied Gray with no other information aside from an instruction to obtain the academic calendar and his class schedule from USF. Because Gray did not do so, Martinez claims that he entered the plea without knowledge that he had a potential alibi defense, rendering the plea involuntary.

Martinez does not explain, however, exactly how these documents would have assisted him in preparing the defense. He contends in his petition that the documents were necessary to recollect events, but the record shows that he already

19

knew—as he told the police on December 11, 2007—that October 31, 2006, fell during USF's homecoming week. He also asserts that *his own* class schedule and an academic calendar could be used to jog the witnesses' memories, but he does not explain how access to these documents allowed him to identify McPhearson and Sassine, friends with whom he represents he kept in contact during the relevant time period, as potential alibi witnesses in mid-2009 but not in late 2007 or early 2008. Notably, the photographs Martinez supplied with his state post-conviction motion to substantiate the affidavits appear to have come from his MySpace account, to which he presumably had access throughout Gray's representation of him. Additionally, according to a flyer in the record, the university's homecoming events for Tuesday, October 31, 2006, consisted of a blood drive, a carnival, and a tug-o-war competition. None of the three affidavits mentions Martinez's attendance at any of these events, and it is unlikely that Martinez would need information from his university to know that October 31, 2006, was Halloween or that he attended a party. Yet Martinez essentially asks us to infer that his class schedule and an academic calendar, once obtained by his post-conviction counsel, caused him to recall that McPhearson and Sassine had not only seen him but had taken photographs with him that night, which he had uploaded to his MySpace account.

20

Thus, the available facts demonstrate that, at the time Martinez entered his *nolo contendere* plea, he was aware of and had already asserted an alibi for the night of October 31, 2006—that he was on USF's campus for its homecoming week. However, he was unable to name any witness who might be able to corroborate this alibi. Without names from his client beyond the potential witnesses listed in the police report or any indication that Martinez's class schedule or an academic calendar would help him to ascertain where he was at 11:00 PM on Halloween night, Gray did not pursue the alibi defense further. We do not find this course of action to be professionally unreasonable given the deference we must afford to counsel's decisions.

Moreover, contrary to Martinez's suggestion, the alibi defense was not his "only possible defense," so Gray did not have an absolute obligation to "pursue [it] until it b[ore] fruit or until all hope wither[ed]." *Williams v. Head*, 185 F.3d 1223, 1237 (11th Cir. 1999) (quoting *Foster v. Dugger*, 823 F.2d 402, 405 (11th Cir. 1987)). Gray's failure to investigate the alibi does not render his representation of Martinez inherently deficient. The record shows that Gray pursued several other avenues on Martinez's behalf during his representation, most notably the potential suppression of Martinez's inculpatory statement. Before Martinez entered his plea, the prosecution had informed Gray that it would cease plea negotiations if Gray filed a motion to suppress the confession. Gray also knew that even if the motion

21

were successful, the prosecution could still use Martinez's statements to impeach him on the stand, if he were to go to trial. Perhaps most importantly, a guilty verdict at trial exposed Martinez to a potential fifteen-year prison sentence, a significantly greater punishment than the youthful offender sanctions Martinez would receive pursuant to the plea agreement, even with an open plea. These and other factors led Gray to advise Martinez that he should enter the plea rather than go to trial. Under the circumstances, it cannot be said that "no competent attorney" would have acted as Gray did here.

Martinez has failed to show prejudice for similar reasons. Although he represents that he would have gone to trial rather than enter the plea had the testimony from Derek, McPhearson, and Sassine been available, it is doubtful that such a decision would have been rational under the circumstances. If the three witnesses testified at trial as they swore in their affidavits, only McPhearson definitively states that he saw Martinez the day of October 31, 2006, at some point before the 10:00 PM hour, when the two took a photograph, and at 3:00 AM in the dormitory. Sassine recalls that she saw Martinez at a party sometime in October 2006, that he was wearing a costume, that he was still at the party when she left, and that she usually left parties between 1:30 AM and 2:00 AM. Derek states that she did drive Martinez to Sebring to visit a girl and that she is "fairly sure" she did this before homecoming. Mindful that Tuesday, October 31, 2006, did occur prior

22

to USF's homecoming game that year, only Derek's recollection that she and Martinez left Tampa in "mid-to-late afternoon" suggests inconsistency with D.G.D.'s testimony about the timing of the incident. However, as reflected in the police report, Derek's cellphone records and her statements to the police shortly after the incident align with D.G.D.'s version of the events.

Accepting the affidavits at face value and considering other evidence in the record, then, Martinez's potential alibi defense does not appear particularly strong. Further, he had admitted to the police that he had engaged in sexual contact with D.G.D. after his eighteenth birthday. Although Gray sought to suppress the confession as illegally obtained, the trial court may have disagreed and allowed the confession into evidence. Even if the motion were successful, the prosecution could have used the confession to impeach Martinez on the stand, were he to testify. Finally, by rejecting the plea offer and proceeding to trial, Martinez may not have been entitled to youthful offender sanctions and risked a possible fifteen-year prison sentence. The plea agreement, on the other hand, contemplated a six-year sentence without incarceration. Even with the alibi evidence and the potential suppression of the confession, it is unlikely that the choice to proceed to trial would have been rational under the circumstances, and we doubt whether Gray would have changed his recommendation given the substantially higher punishment Martinez faced at trial.

23

**D.**

In the event, however, that *Wilson* is determined to have been wrongly decided, the result here would be the same. If we applied *Ylst*, we would "look through" to the "last reasoned opinion" of the Florida state post-conviction court, which we have already determined misapplied *Hill*. *See supra* part II.B. Martinez's petition would then receive *de novo* review, rather than the more deferential § 2254(d) review. *See Wiggins v. Smith*, 539 U.S. 510, 542; 123 S. Ct. 2527, 2546 (2003). But even without the presumption that the Florida state courts correctly adjudicated Martinez's claim, he has failed to show that he is entitled to habeas relief for the same reasons described *supra* part II.C.

**III.**

Martinez also argues that the district court abused its discretion by denying him an evidentiary hearing on his ineffective assistance of counsel claim relating to the alibi defense. The additional opportunity to present information not before the state courts that originally adjudicated the petitioner's claims may be warranted if an evidentiary hearing "could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Boyd v. Allen*, 592 F.3d 1274, 1304 (11th Cir. 2010) (quoting *Schriro*, 550 U.S. at 474; 127 S. Ct. at 1940). However, the district court need not conduct an evidentiary hearing if the record refutes the petitioner's factual allegations,

otherwise prevents habeas relief, or conclusively demonstrates that the petitioner was not denied effective assistance of counsel. *Schriro*, 550 U.S. at 474. "Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Boyd*, 592 F.3d at 1304 (quoting *Schriro*, 550 U.S. at 474; 127 S. Ct. at 1940).

Further, absent a few narrow exceptions, a federal court cannot hold an evidentiary hearing if the petitioner "failed to develop the factual basis of [his] claim in State court proceedings." 28 U.S.C. § 2254(e)(2). He must "diligently s[eek] . . . the opportunity to present evidence at each stage of his state proceedings" by making "a reasonable attempt, in light of information available at the time, to investigate and pursue claims in state court." *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1288–89 (11th Cir. 2012). This normally requires that the petitioner "request[] an evidentiary hearing at every appropriate stage in state court." *Id.* at 1289.

Martinez did not request an evidentiary hearing in his state post-conviction proceedings, instead contending that his motions and the attached exhibits demonstrated that he was entitled to relief. Although Florida law does not require a petitioner to request an evidentiary hearing in order to receive one, *Jacobs v. State*, 880 So. 2d 548, 550 (Fla. 2004) (citing Fla. R. Crim. P. 3.850(d)), we question

25

whether Martinez's failure to request the opportunity to present evidence to the state post-conviction courts—despite the fact that his ineffective assistance claim related to the alibi was ultimately denied without an evidentiary hearing—constitutes sufficient diligence. Nonetheless, assuming Martinez did exercise appropriate diligence, we have already determined that the facts he alleged in his petition are either refuted by the record or do not demonstrate that Gray provided ineffective assistance by not investigating the alibi defense. The district court thus properly denied Martinez's request for an evidentiary hearing.

AFFIRMED.